Good morning, Your Honors. I'm Irredeemable Gonzalez on behalf of APELA and Mr. Roberto Cano. I would like to reserve two minutes for rebuttal. Yes. Your Honor, this case is a case of political discrimination which has a different twist. First, I would like to address the issue if we presented a prima facie case on political discrimination. The defendant, one of the defendants, Mr. De Jesus-Cardona, was formerly the regional director of the agency back in 2008-2012 under the government of the Popular Democratic Party. We have to bear in mind the regional director is a position in which political affiliation is a proper requirement. In the 2012 election, the New Progressive Party won and Mr. De Jesus-Cardona was transferred and plaintiff Roberto Cano was appointed because of his political affiliation as regional director of the agency. Then, in 2008, then in the 2012 election, the Popular Democratic Party won and Mr. Roberto Cano was transferred to his career position and Mr. De Jesus was reappointed again to the position of regional director. So, there is no issue that Mr. De Jesus-Cardona and the secretary, because the secretary is the one that makes the appointment as the nominating authority, of Mr. Roberto Cano's political affiliation and of Mr. De Jesus-Cardona's political affiliation because, as I stated before, that is a proper requirement for that kind of position. Besides that... How does that prove the first point, though, that the secretary knew of Mr. Cano's political affiliation? I can see where it would prove the second point, but the first point might be irrelevant to the secretary's decision to appoint someone who he knows is of the same political party. Well, in the case of the secretary, he sued in his official capacity only for the injunctive relief that political discrimination be ordered to stop. So, we don't have any claim against the secretary in his personal capacity. But still, we have another issue here, is that Mr. Roberto Cardona, and this is a strange thing that happens in government. I don't know if it's a good government... I'm sorry, I just have to make sure that I'm keeping up with you. Negron is the secretary? Not now, but he was the secretary. Is it Negron? How do you pronounce it? Negron. But I thought one of the elements was that he had to know of the plaintiffs. That's exactly what we're saying there. Although we don't have a claim against him in his personal capacity, he knew of Mr. Roberto Cano's political affiliation. Okay, but my question to you was, the evidence that you suggested, the logic that you suggested, tells me that he knew of the replacement's political party, but it doesn't say anything about Mr. Cano's, the plaintiff's party. It says here, because when he appointed, back in 2013, after the 2012 election, he appointed him to substitute the former regional director under the New Progressive Party, which was plaintiff. So the person that was holding that position is in fact a member of the party that is in government. Because the regional director position are members of the political party that is in government because he decided that that's a proper requirement. And besides that, that's another fact. It can be a proper requirement. It's not required that they be the same party. Right, but that's another issue. In the government, for a strange reason, there's an organization called Servidores Públicos, which will be in English, public employees with the New Progressive Party, and public employees with the Popular Democratic Party. And that organization is sanctioned by the state commission of election board. And Mr. Roberto Cano was the leader of that organization within the agency. And that is something that being the, holding a legal position, that is completely identified with the political party, but that becomes of public knowledge within the agency. It's not that he was a member of that political organization, but he was the leader of that organization within the agency. And the evidence that the secretary knew that is what? Well, you know, the evidence that he directly knew that is another fact is that Mr. DeJesus Cardona told directly plaintiff that he will work with the secretary to dismiss him. Bear in mind that we are not challenging the fact that Mr. Roberto Cardona was removed from the position of regional director, because being removed because of our political affiliation, that is illegal. It's illegal. He was removed for another issue. And what we're saying here, your honor, is that the real reason why he was removed was the political affiliation. And there is no doubt as to that defendant, DeJesus Cardona knew, and DeJesus Cardona became the regional director, knew of Mr. Roberto Cardona's political affiliation. But there's another thing here that is really strange, that in all the cases that I handled have never occurred before. The nomination authority, when it's going to transfer or it's going to dismiss an employee, he just sent a letter, a registered letter, to the employee informing him of the transaction. But in this particular case, Mr. DeJesus Cardona went to the secretary, got the letter, and he hand-delivered the letter of dismissal and the first letter of transfers and the letter of dismissal to Mr. Roberto Cardona, and he told him that this was done by the secretary, this was done by him, because of the revenge of his, he being a New Progressive Party member, and he being the responsible for the first transfer of Mr. DeJesus Cardona. So... I fear I may be confused now. Your client was the regional director. Pardon me? Your client was the regional director. Right, under the New Progressive Party. Okay, and he was removed from that position and that's what caused this lawsuit. No. Okay. No, he was removed from that position, and that fact that he was removed is illegal because he went back to his career position. And then it's his discharge from his career position. That's the one we're challenging, that the real reason why he was removed from his career position was political discrimination. And are you saying that Secretary Negron was the one who removed him from the regional director position? Yes, because... And then you're saying that since that was a political position, he must have known what his party was, so that's why he was swapping them. Okay, not only that reason, but also the fact that he was a member of that political organization, he was the head of that political organization within the agency, and the fact that Mr. DeJesus Cardona explicitly told him... But on that point, I don't see how you can use that against Secretary Negron. It would be hearsay. Yes, Your Honor, but as I said before, our main claim here is against Mr. DeJesus Cardona as defendant. We are not claiming anything against the Secretary in his personal capacity. Yes, Your Honor. I'm somewhat confused. Was Mr. DeJesus the person that discharged your client? Pardon me? Did Mr. DeJesus discharge your client? No. Who discharged your client? A letter by the Secretary, but that letter was hand-delivered to my client by Mr. DeJesus Cardona, which is something that is never done. So? And Mr. DeJesus Cardona expressly told my client, here is your reward for being a member of the New Progressive Party, and here is my revenge because I was dismissed four years before because of my affiliation and your affiliation. But did he have any supervisory authority? No, the nominating authority was the Secretary. He delivered the letter. Right. How does that make him responsible? How does that make Mr. DeJesus Cardona responsible? Because he was the one that procured his dismissal, and he stated so. He said that he was going to go to the Secretary, he was going to do it, he was going to see that the Secretary dismissed him, and all the reasons of the sexual harassment that was charged against him were a sham, and they were all constructed in order to avoid the fact that this is a political discrimination case. We took this to the state court, and the state court decided that the dismissal of plaintiffs from the position, from his career position, was illegal, because they had no evidence whatsoever to sustain the political harassment. Why is the state court decision restricted to the defendant? Well, you know, we're saying exactly, we don't have now an issue as to that his dismissal was illegal. Illegal. His dismissal was in fact illegal, and that was already decided. The only issue that we have in court now is the political discrimination actions of Mr. De Jesus Cardona against Mr. Roberto Tano. Was it required to make that claim in the state court once you started the lawsuit based on the dismissal charges? You know, of course, it was decided with prejudice against our client. We cannot file it again in state court. But why does it have to be decided in this case? If you were able or you had a right to raise that issue in state court, and you didn't raise it, doesn't that present some issues of Mr. De Jesus Cardona? No, Your Honor, because what happened in state court was that when my client was dismissed, he appealed the decision, and the only thing that the state had was the charges, the written charge filed by a lady of name Polanco Roman. When we challenged that, for reasons that we don't know, she simply disappeared from Puerto Rico. She went to the States. As a matter of fact, we found out that she's living in Texas since then. And we were never able to question her to challenge her allegations. And that's why the state court decided that the government didn't have any evidence to sustain the sexual harassment allegations against Mr. Roberto Cardona, Mr. Roberto Cano. And what we're saying is not only that sexual harassment charges were not true, they were constructed in order to hide the real reason, which was political discrimination. You've reserved some time. Yes, Your Honor. Thank you. Good morning. Good morning. May it please the Court. Susana Peña-Harrigan on behalf of defendants and police. I would like to start first by clarifying Negron's role in here. He was the former Secretary of Correction, and the plaintiff was reinstated with back pay, and therefore any reinstatement remedy request would be moot. And there is no developed argumentation as to whether or requesting any additional injunctive relief against Negron, and therefore we believe that there is nothing pending against the Secretary. I'm sorry to interrupt you, but can you tell me what the state court proceeding, what it was about, and what it decided? Yeah. There was a sexual harassment complaint filed against the plaintiff. That was filed in November of 2012. It was filed by a co-worker, a lady, a Polanco, and the Secretary of Negron was not the Secretary of Correction at that time. When Negron came to become the Secretary of Correction, he was faced with this internal investigation going on, and all the procedural safeguards followed until a hearing officer determined and confirmed the dismissal determination. The plaintiff appealed to SIPA, which is the Federal Administrative Agency, and SIPA first determined that since Polanco could not be located because she had moved to live elsewhere outside of Puerto Rico, he had to be reinstated. However, SIPA reconsidered, and the plaintiff went on judicial revision to the Puerto Rico Court of Appeals. And the Puerto Rico Court of Appeals determined that because Polanco could not be located in order to, you know, and the DCR could not locate Polanco, the plaintiff had to be reinstated. However, our contention is that the fact that the Court of Appeals in judicial revision determined that he had to be reinstated doesn't automatically provide for any political bias or doesn't make inexistent the unbiased or legal motive. The only evidence in the record for that termination was because of the sexual harassment complaint. There is nothing else in the record. Well, what about, you have not raised race judicata. No, we haven't. No, Your Honor. So, going back to the evidence in the case, I had not understood from the briefs or the order below what I just heard from counsel for plaintiff that the defendant was fired, was removed from two positions? Your Honor, first I would like to clarify that the complaint, at least I don't see it, doesn't state that the position of regional director required political considerations. So, or any political affiliation in particular. It doesn't state that in the complaint. However, plaintiff was removed from his regional position. He was transferred to another position. The plaintiff is not challenging that transfer. And the Court noted that. He's using that to satisfy the element that the ultimate decision maker knew of his political affiliation. Yes. That's what that was all about. Yes, but he's not challenging. But he's using that as that. However, there's nothing in the record showing that there's a political consideration necessary for that regional position. And the fact that Negron is not mentioned anywhere in the plaintiff's statement of additional facts. Whatsoever. Negron is not mentioned anywhere. There's no allegation and there's no evidence that Negron knew of his political affiliation. And he's basically incorrectly relying on the absence of evidence negating Negron's knowledge or awareness of his failing to point to the record. So, he had three pieces of evidence. He had that one, which you've just addressed. He then had the, well, everybody must have known because I was a political activist. He was a coordinator of an MPP affiliate organization. But then he's got another one that he tries to use against both Negron and de Jesus. It seems to me it's hearsay against Negron. But as to de Jesus, what do you say we have to assume under the summary judgment standard that de Jesus said that he worked with Negron to get Negron to fire him because of his political affiliation? How do you deal with that evidence under Rule 56? I will go to that, certainly. But I would like to first address the coordinator position. That coordinator position was during the elections. And pursuant to that position, he engaged in political activity, correct? However, that political activity was engaged outside of working hours. And it was also during a period of time when Negron was not at the Department of Correction. So, just touching upon that. I understand that. However, now going on to the other. First, the district court in its gatekeeping function determined that the statement of additional fact number six, which deals with when the conversation took place. The court determined that it was mischaracterized. The conversation took place in 2013, not in 2009. What difference does it make? If it's an admission, it's admission. Well, admission of... Well, as to De Jesus, the problem is that De Jesus did not make the decision. There's nothing in the record showing... He's relying on the absence of... The absence of evidence as to lack of participation, but he has a burden of proof. I think what he's relying on, and if he's not, you can explain to me. I think what he's relying on is that De Jesus said he worked with Negron to get Negron to fire him. So, doesn't that provide the link, and to do so for political reasons? Yes, Your Honor. So, I think the argument is that provides the causal link between the motive and the actual decision. It's as if a lower-level supervisor can't fire someone because of their race, but they go report to the CEO, get rid of that guy because they want him gone because of his race, and the CEO unwittingly fires him. Wouldn't there still be a claim? No, Your Honor, and I would address that now. First, there is the problem with the del Toro case. In the del Toro case, there were similar political conversations between Izquierdo, who was plaintiff's supervisor in del Toro, no, del Toro's supervisor, and the fact that he delivered the letter in del Toro didn't make him a participant. So, it is our... Del Toro didn't say, the deliverer of the letter in del Toro didn't say that he actually did work with the person who made the decision and did it because of political reasons. It says, Izquierdo said, in del Toro, that's in del Toro, Izquierdo said, Pereira knows that you filed a claim against us and that you are a member of the NPP. So, it is our contention that whether he said that Negron was going to work with him or not, it doesn't provide. Second of all, I invite the court to see the statements of additional facts. I invite the court to see statement number six and number ten. Nowhere, nowhere is Negron mentioned whatsoever. No, but that's really the point. It seems to me that you're arguing that del Toro breaks the link with respect to Negron. I think Judge Tejada's questions go to the cat's paw theory, the claim against de Jesus. But de Jesus is not the decision-making authority. And under classic cat's paw theory, the link is established exactly the way Judge Torrea described it. He can still be a defendant. He can still be a defendant, but there's no sexual, sorry, there's no political harassment claim against him. Because how can you have a claim against someone who doesn't make the determination of firing, of terminating him? He's not the person with authority to terminate him. There's no link in the record whatsoever that de Jesus actually participated with Negron. Where is the evidence? His own statement. His own statement. But that would be, you know, that would be, but he's not the person who made the decision to terminate him. I would have to impute that in Negron. However, if there was a political harassment claim, that I would be able to prove with those statements. But there is no political harassment claim in this case. And the claim is for the discharge. And the discharge, the evidence in record, and the evidence in record is that Negron made the determination. Negron has no knowledge. Therefore, since he's the nominating authority, there is no, there's a lack of evidence as to political bias, as to the person who made the decision, right, for the termination. And the only thing in record showing the reason behind the termination is precisely the sexual harassment complaint. The fact that the sexual harassment, that the Court of Appeals in Puerto Rico determined he had to be reinstated, which he was, doesn't mean that automatically that provides for the political bias. Let's look, just hypothetically, if the, if the sex harassment, whatever that specific charge was, if that were entirely made up by DeJesus, and DeJesus took that and told the plaintiff that he had taken that to the secretary and used that as the way to get him fired, but in fact this was political revenge, would that be enough? Yes. To establish the case against him? Probably yes, probably, but let me say something. Yes. There is nothing, not even an allegation, nothing in the record saying, one, Negron was not at the Department of Correction when the sexual harassment complaint was filed. Second of all, there's no allegation, no evidence whatsoever, that Polanco filed a sexual harassment complaint aided or helped by DeJesus. There's nothing in record, absolutely nothing, that DeJesus participated in the filing of that sexual harassment complaint. So therefore, if there is nothing regarding DeJesus participating or instigating Polanco to file a sexual harassment complaint, and also the fact that there is nothing linking DeJesus with Negron, because there's no evidence linking them. Except for his statement that he. For his own statement, which goes against him, but not against Negron. There's no link. Sorry, Your Honor. But it's DeJesus. That's the whole point. We're talking about DeJesus as a defendant. And my question, my answer would be that DeJesus is not the person who made the determination. That if DeJesus would be, if there was a claim of political harassment against DeJesus, then I would say that that might fly, you know, with this, in the case. I still believe that if. If his statement were to the effect that I'm working with the secretary to get you terminated, or I worked with the secretary to get you terminated, and this is my revenge for you doing it to me, wouldn't that be enough to get past this stage? No, because he's imputing something on the secretary that he hasn't proved. It's hearsay. It's not hearsay when it's used against DeJesus. But he's not the one who made the decision. It doesn't make any difference if it's a cat's paw theory. Well, it is our contention that since he did not make the decision, and that based on Del Toro, in which there was, there was allegations that there was political conversations between Izquierdo, who was the supervisor of Del Toro, and the fact that the court determined that the fact that he delivered a letter is not sufficient to provide for participation, it is our contention that it is not sufficient. I would say that a political harassment would be, would suffice against DeJesus. That would be our defendant's contention. It would be sufficient for a political harassment, but not for the termination itself. All right. Thank you. Thank you. Can you tell me exactly what it is your claim that you have against Mr. DeJesus? Yes, Your Honor. Mr. DeJesus was the person that procured with the secretary, because the secretary is the one that has the nomination authority. He procured my client's dismissal. When you say procured, what do you mean by procured? He was the one that went to the secretary, told him there is a political harassment claim against Mr. Roberto Cano. We're going to use this. There's no evidence he said that to the secretary. Pardon me? There's no evidence that he said that to the secretary. Well, he said that he was going to use that with the secretary. But he never said that he told the secretary any of it. He just said he worked with the secretary to get him. Okay. You're right, Your Honor. He worked with the secretary to procure his dismissal. And it's been already decided by the state court that the sexual harassment reason, if we can call it that way, was illegal. This man, Roberto... It was illegal. So... In what way was it illegal? Okay. Mr. Roberto Cano had this consensual relation... Let's not go sideways. I have really some confusion about this. I'm trying to get you to help me. Okay. Okay. You're saying that the sexual harassment case was illegal. I assume you claim there wasn't enough evidence because the prime witness had left protected. No, Your Honor. How does that make it for political reasons? Because what we're saying is that according to Mount Healthy, we have an unlawful reason for the dismissal. They claim they have a lawful reason and that lawful reason has already been decided that it was not lawful. But what you're talking about unlawful, as I understand it, a female employee makes an allegation of sexual misconduct. It comes forward. It's a credible right or wrong, credible on its face. They don't fire your guy. They instead have an independent investigator and that independent investigator, who you're making no claim was politically biased, found that the harassment occurred and only then does Secretary Nygron discharge the fine. So what difference does it make that thereafter a court disagreed with the results of that independent investigation and set aside the termination and they brought the person back? Because it was not exactly that way, Your Honor. You see, they have this concessional relation. She asked my client as regional director for a transfer. My client could not help her with the transfer because of the electoral ban. That's 60 days prior to the election and 60 days after the election. You cannot make any... But none of this makes any difference at all. Nygron doesn't know any of this. All of this just goes to, these are the facts, but the key thing is they didn't pull the trigger until the hearing examiner came back and said, I think... Yes, but it goes to the administrative investigation of this officer because this lady filed a complaint one week after the elections. It is not until April of 2013 that the secretary sends a letter to my client stating of his intention to dismiss him. Once my client object that, it's that the examiner is appointed. At that moment, for we don't know what reason, this lady disappears. So the examiner, although my client presented all the evidence against those charges, he never interviewed that lady. But there's no discrimination claim against the examiner. I know there's no discrimination. So we have to assume the examiner was proceeding in good faith and found her claims credible. How could Nygron at that point not dismiss or suspend the person? You don't know because at the time that the hearing was conducted, this lady was not in Puerto Rico. The only thing that that examiner had was the charge that she filed one week after the elections. And the fact that she disappeared is the fact that makes that because in that procedure, the state has to prove the illegal action of my client. It doesn't go that my client has to prove that those charges were not right. It's the state that has to prove that those charges were correct. So what we're saying here, Your Honor, is that all that procedure on the excuse of a political harassment had never occurred. Were because of political discrimination. And that was sustained by Mr. De Jesus' direct statement to our client that he was going to see that he got dismissed. Thank you. Ms. Panagiaricano, could you please come up? Sure. We're at summary judgment stage here. Yes, we are. Was Nygron... Deposed? No. And did they ask to depose him? No, that I know of, no. I was in the attorney record, but I believe that he was not deposed. And that I know for sure. Well, Your Honor, he was deposed. He wasn't, right? All right. He wasn't. Only De Jesus was deposed. Nygron was not deposed. You said he was. He was deposed. No, Nygron? Yes, Nygron. No, that's in the record. It says that he was deposed. De Jesus was deposed. Nygron, no. Excuse me? Thank you. I'm sorry. We'll just stick to the record. It's in my brief. Sorry I asked. Okay. No. One case, and probably he was deposed in another case. So, I'm sorry. Terrific. No, that's very helpful. I'm sorry. Thank you. No, that's very good. Thank you. Hopefully the other case won't come. Why? Right.